UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> UNITEDHEALTH GROUP INCORPORATED, *et al.*, <br><br> *Defendants*. | Civil Action No. 1:22-cv-0481 (CJN) |

**DEFENDANTS' REPLY IN SUPPORT OF**
**MOTION TO SET A TRIAL DATE AND ENTER A CASE SCHEDULE**

The Government has advanced no good reason why it needs two months more to prepare for trial in this case than it did four years ago in *United States v. AT&T Inc.*, No. 1:17-cv-02511-RJL (D.D.C.). The Department of Justice challenged that merger—valued at $108 billion inclusive of debt—and the parties were able to mobilize their resources, take extensive party and third-party discovery, and be ready for trial in 119 days. All of the categories of discovery the Government raises in its Response (*see* Pls.' Resp. to Defs.' Mot. to Set a Trial Date & Enter a Case Schedule ("Gov't Resp.") (ECF No. 34) at 6–7) occur in most merger cases, and Judge Leon's opinion confirms that they occurred in *AT&T* as well. *See United States v. AT&T Inc.*, 310 F. Supp. 3d 161, 184–85 (D.D.C. 2018), *aff'd*, 916 F.3d 1029 (D.C. Cir. 2019). The Government's chart showing an average of 166 days to trial in merger cases misses the point that the typical merger case *in this District* generally proceeds to trial much sooner than that. Focusing just on the cases in this District and removing *Bertelsmann* as an outlier, the average time to trial for a merger case in this Court is 134 days, about two and a half weeks more than Defendants are requesting and almost two months less than the Government is seeking. As explained more fully in the Answer

1

UnitedHealth Group Incorporated ("UHG") is filing today, this merger will accelerate transformational efficiency improvements in the health care system and improve clinical outcomes. Further delay not only poses a risk of irreparable harm to Defendants but threatens to postpone those benefits for patients and the healthcare system. Defendants submit that their proposed schedule is manageable and will allow this important case to proceed to trial efficiently and expeditiously.

The Government tries to distinguish *AT&T* by arguing that the Court only adopted an expedited schedule "in order to decide the case before the parties' merger agreement was slated to expire." Gov't Resp. at 9. But AT&T and Time Warner conformed their agreement to the Court's schedule, not the reverse. While it is true that the Court ordered trial to begin a month before the already-extended "drop-dead date of the merger," the parties had to extend the drop-dead date again to allow time for a final decision and an appeal. *See AT&T*, 310 F. Supp. 3d at 184, 253. As the *AT&T* Court recognized, litigation delays in a fast-evolving industry can cause irreparable injury, and the associated investigation, litigation, and trial can impose "staggering" costs. *Id.* at 253. An accelerated discovery period and a prompt trial will minimize these risks and costs and are appropriate in this case.

Defendants' proposed schedule strikes a fair balance between minimizing the cost of delay and providing the Government an opportunity to make its case. The Government contends otherwise, arguing that Defendants' proposed schedule does not reasonably permit the discovery the Government needs. *See* Gov't Resp. at 5–8. The Government's position has three basic flaws.

*First*, the Government already has had extensive discovery in this case. While that does not foreclose further discovery and Defendants have never contended as much, it is not wholly irrelevant, as the Government suggests. The Government has had some of the most central

2

documents in the case for more than a year as a result of Defendants' Hart-Scott-Rodino pre-merger notification filing on January 19, 2021. As Defendants explained in their motion, they subsequently produced more than 6.8 million documents exceeding 28.9 million pages from more than 150 custodians, plus hundreds of pages of interrogatory responses and white papers. *See* Defs.' Mem. in Supp. of Mot. to Set a Trial Date & Enter a Case Schedule ("Defs.' Mem.") (ECF No. 27-1) at 6–7. The Government has had the bulk of this information since September 2021, leaving six months for its review. The Government also took 23 depositions during its investigation, including of the CEOs and other executives of both companies, and spoke with numerous third parties.

The Government's complaints about the timing of Defendants' productions are not only inaccurate and unfair, but they gloss over the length of time the Government has had to review the materials that were provided.[1] To claim that it now needs another six months to review this information and re-plow the same ground in dozens of depositions is inconsistent with Rule 26's requirement that discovery should be consistent with "the parties' relative access to relevant information" and an assessment "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).[2]

---

[1] While irrelevant to the question before the Court now—*i.e.*, what remains to be done in order to proceed to trial—the Government's assertion that Defendants were slow or inadequate in their responses is inaccurate. Defendants cooperated with the Government's investigation, providing massive amounts of documents, data, and information as evidenced by a long record of engagement. The Government also omits the extensive discussions, post-compliance with the Second Request, regarding the additional information the Government claimed it needed in its investigation, including Defendants' compliance with an additional Civil Investigative Demand issued by the Government in November 2021, seven months after the original Second Request was issued. Defendants accommodated these requests and provided the Government still additional time for their review. *See* Ex. A (Nov. 1, 2021 Extension of Timing Agreement). At the same time, the Government agreed to resolutions with Defendants during the investigation of all scope-of-production issues that arose during that process, and agreed that UHG validly certified substantial compliance with the Second Request.

[2] The Government cites *SEC v. Sargent*, 229 F.3d 68, 80 (1st Cir. 2000) for the proposition that a pre-complaint investigation cannot limit post-complaint discovery. But *Sargent* dealt with a district court's decision that afforded the agency "virtually no discovery," 229 F.3d at 74, a wholly different situation not present here.

*Second*, the Government attacks a strawman by complaining about the scope of discovery proposed by Defendants. The Government fails to mention that it is discussing a prior draft of the Defendants' proposed CMO that is no longer operative. On March 9—nearly 24 hours before the Government filed its Response—Defendants sent the Government a revised proposed CMO. *See* Ex. B (Mar. 9, 2022 Email from A. Sidrys). As a result, the limitations the Government complains about are no longer in Defendants' proposal.

For instance, Defendants have withdrawn proposed limits on the Government's requests for production; of course, those requests will still need to be proportional to the needs of the case and the schedule set by the Court, and Defendants reserve the right to object to the Government's requests on those grounds. *Compare* Gov't Resp. at 5, *with* Ex. B (Mar. 9, 2022 Email from A. Sidrys). Additionally, Defendants propose that *both sides* be allowed to depose the witnesses on the other side's witness lists, but also proposed limits on the number of depositions to 20 on witness lists plus an additional 10 depositions for non-listed witnesses so that they can be completed within an appropriate time frame. *Compare* Gov't Resp. at 5, *with* Ex. B (Mar. 9, 2022 Email from A. Sidrys). These terms provide ample opportunity for the Government to take whatever additional discovery it feels it needs to prepare for trial consistent with Defendants' proposed schedule.

*Third*, the Government's description of the scope of discovery and trial ignores the fact that Change Healthcare Inc. ("Change") is currently in the process of divesting its claims-editing business, including ClaimsXten, which will eliminate the only horizontal merger issue identified in the Complaint. The Government buried and dismissed this critical fact in Paragraph 119 of its 129-paragraph Complaint, but it will substantially narrow the scope of this case.

The Government has already taken discovery into this planned divestiture. Nearly three months ago, Defendants informed the Government that Change would divest ClaimsXten. *See* Ex.

4

C (Dec. 13, 2021 Email from T. Chapman). Following this proposal, the Government conducted two Rule 30(b)(6) depositions on the "remedies proposed," "[a]ny remedies considered," the "rationale for the inclusion or exclusion of any assets" in the divestiture package, and Defendants' "business plans and strategies related to" the proposed divestiture. *See* Ex. D (Ex. 1 from Jan. 28, 2022 Deposition of C. Prevost); Ex. E (Ex. 1 from Jan. 27, 2022 Deposition of S. Yurjevich). Defendants have engaged in a comprehensive process to market this asset and are in the final stages of selecting a qualified buyer. This divestiture will ensure that UHG never takes control of the business Plaintiffs allege will give it a monopoly, and that there will be no increase in market concentration relating to claims editing. This essentially moots half of the Government's case and significantly narrows the issues for discovery and trial. Any discovery into the divestiture will be narrow and focused and will not, as the Government implausibly suggests, increase the scope of this case.

      Finally, in response to the Court's request, Defendants propose that the trial be set for two weeks with the time being evenly divided between the Government and Defendants and monitored by a chess clock. At this stage it is impossible to know whether the Government plans to call the merging parties' executives in its case-in-chief. If that occurs, to promote efficiency and minimize inconvenience to witnesses, Defendants will conduct their examinations of their own witnesses when called by the Government, with any time taken charged against Defendants' allocation. In *AT&T*, for instance, the majority of the testimony came in through the Government's case-in-chief, with the merging parties calling only three experts and three fact witnesses. *See AT&T*, 310 F. Supp. 3d at 187. The Government's proposal to take more than two weeks (12 days of trial time) seems excessive given the issues in the case. If they do so, however, Defendants believe they could present their defense case in half that time.

Dated: March 11, 2022

Respectfully submitted,

By: */s/ Craig S. Primis*
    Craig S. Primis

Matthew J. Reilly, P.C. (D.C. Bar No. 457884)
Craig S. Primis, P.C. (D.C. Bar No. 454796)
K. Winn Allen, P.C. (D.C. Bar No. 1000590)
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 389-5000
Facsimile: (202) 389-5200
matt.reilly@kirkland.com
craig.primis@kirkland.com
winn.allen@kirkland.com

Anne M. Sidrys (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
asidrys@kirkland.com

Charles Loughlin (D.C. Bar. No. 448219)
Justin W. Bernick (D.C. Bar. No. 988245)
Leigh L. Oliver (D.C. Bar. No. 493654)
**HOGAN LOVELLS US LLP**
555 Thirteenth Street, NW
Washington, D.C. 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
leigh.oliver@hoganlovells.com
chuck.loughlin@hoganlovells.com
justin.bernick@hoganlovells.com

*Counsel for Defendant UnitedHealth Group Incorporated*

Sara Y. Razi (D.C. Bar No. 473647)
Abram J. Ellis (D.C. Bar No. 497634)
Nathaniel Preston Miller (D.C. Bar No. 1021557)
**SIMPSON, THACHER & BARTLETT LLP**
900 G Street, NW
Washington, DC 20001
Telephone: 202-636-5500
Facsimile: 202-636-5502
sara.razi@stblaw.com
aellis@stblaw.com
preston.miller@stblaw.com

David I. Gelfand (D.C. Bar No. 416596)
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
2112 Pennsylvania Ave, N.W.
Washington, DC 20037
Telephone: 202-974-1500
Facsimile: 202-974-1999
dgelfand@cgsh.com

*Counsel for Defendant Change Healthcare Inc.*

6

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 11th day of March 2022, a copy of the foregoing Defendants' Reply in Support of Motion to Set a Trial Date and Enter a Case Schedule was electronically transmitted to the Clerk of Court using the CM/ECF system, which will transmit notification of such filing to all registered participants.

      /s/ *Craig S. Primis*
      Craig S. Primis, P.C. (D.C. Bar No. 454796)