This document was previously filed under seal at ECF 34-3 (Exhibit B - FILED UNDER SEAL) and ECF 35-1 (Exhibit A - FILED UNDER SEAL).

# EXHIBIT A

**FILED** 

**PROPOSED REDACTIONS HIGHLIGHTED**



**U.S. Department of Justice**

Antitrust Division

---

*Liberty Square Building*

*450 5th Street, N.W. Suite 4100*
*Washington, DC 20001*

February 23, 2022

Ms. Leigh Oliver Esq.
Hogan Lovells US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004

        Re:   UnitedHealth Group's Proposed Acquisition of Change Healthcare

Dear Ms. Oliver:

I write in response to your letter of February 18, 2022, to Principal Deputy Assistant Attorney General Mekki. While we appreciate the parties' recent engagement with the Antitrust Division concerning UnitedHealth Group's ("United" or "UHG") proposed acquisition of Change Healthcare Inc. ("Change"), we take issue with and must clarify the record regarding your characterization of the Division's investigation.

First, you state in your letter that you are surprised that the Antitrust Division has factual questions regarding the proposed transaction after 14 months of investigation. As staff has made clear, the Antitrust Division's investigation of the proposed transaction has been contentious and protracted because the merging parties have delayed providing data and documents. To provide a few examples:

- Change did not complete its customer contact lists in response to staff's voluntary request letter, which staff sent on January 23, 2021, until March 10, 2021,[1] while United took until February 26, 2021.[2]

- UHG did not produce organizational charts for its OptumInsight subsidiary—let alone its UnitedHealthcare and Optum Health subsidiaries—until a month after the Division issued the Second Request.[3] Even then, the organizational charts and custodian proposal were woefully inadequate,[4] and certain obvious custodians were omitted from the

---

[1] Email from P. Miller to B. Bhagat et al. (Mar. 10, 2021).
[2] Email from A. Howlett to M Brazill et al. (Feb. 26, 2021).
[3] Email from A. Howlett to B. Bhagat et al. (Apr. 23, 2021).
[4] *See id.* (organizational charts omit several parts of the organization, many employees at the level same of the corporate hierarchy, as well as each custodian's number of reports, while custodian proposal omits numerous employees who were later selected as custodians, including five CID deponents). Indeed, the person you identified last week as the correct employee to ask about data rights, ▬▬▬▬▬▬, was not

proposal with justifications that were not credible.[5] Staff conveyed these concerns to counsel in a meeting two days later, and it took UHG two additional weeks to produce revised organizational charts and a good faith custodian proposal for OptumInsight and UHG, and more than four weeks to produce such materials for UnitedHealthcare and OptumHealth.[6] Worse, UHG's assertions and lack of supporting information in custodian negotiations continued to raise questions, necessitating several rounds of exchanges.[7] UHG did not complete its answers to these questions until June 28, 2021.[8]

- Change took until June 1, 2021 to begin data negotiations, while UHG took until June 30, 2021.[9] As you know, data negotiations are complex and the Division relied especially on the parties' representations and answers to our questions to narrow in on the proper data sets. Despite knowing that EDI clearinghouse services were a focus of the Division's investigation, neither party disclosed its clearinghouse transaction data in its initial database materials,[10] instead directing staff to other databases that did not in fact contain the parties' complete clearinghouse transaction data.[11] Only after many weeks of repeatedly pressing the parties did staff uncover these inaccuracies.[12]

- After staff raised concerns with the lack of engagement on the parties' data several times,[13] Change began constructive data negotiations with

---

included on UHG's initial or revised custodian proposals. *See* Email from A. Howlett to B. Bhagat et al. (Apr. 23, 2021); Email from A. Howlett to M. Brazill et al. (May 13, 2021).

[5] For example, during the initial meeting to discuss your proposal custodian proposal, UHG's counsel claimed that ▮▮▮ had no unique responsive documents despite leading the merger transition team and minimized ▮▮▮ involvement in the transaction, asserting that he only signed the merger agreement because no one on the board had signing authority. Meeting with UHG (Apr. 28, 2021).

[6] Email from A. Howlett to M. Brazill et al. (May 13, 2021); Email from K. Hughes to M. Brazill et al. May 31, 2021).

[7] *See, e.g.*, Email from A. Howlett to M. Brazill et al. (May 13, 2021); Email from K. Hughes to M. Brazill et al. May 31, 2021); Meeting with UHG (May 18, 2021); Meeting with UHG (June 3, 2021); Meeting with UHG (June 4, 2021).

[8] Email from K. Hughes to M. Brazill (Jun. 28. 2021).

[9] The initial lists of databases were sent the day before these meetings. *See* Email from S. Houck to M. Brazill (May 31, 2021); Email from A. Howlett to M. Brazill (June 29, 2021).

[10] *See* Email from S. Houck to M. Brazill (May 31, 2021); Email from A. Howlett to M. Brazill (June 29, 2021).

[11] *See, e.g.*, Email from M. Brazill to A. Howlett et al. (July 22, 2021) ("Our understanding from the call on June 30th is that ▮▮▮ contains ▮▮▮ for each ▮▮▮ ."); Email from M. Brazill to A. Howlett (Aug. 23, 2021) ("[O]ur understanding from our phone call on June 30th is that the ▮▮▮ contains ▮▮▮ for each ▮▮▮ ."); Meeting with Change (July 12, 2021) ( ▮▮▮ tells staff that ▮▮▮ stores ▮▮▮ data).

[12] *See, e.g.*, Email from M. Brazill to N. Hill et al. (June 1, 2021); Email from M. Brazill to S. Houck (June 2, 2021); Email from M. Brazill to S. Houck (July 7, 2021); Meeting with Change (July 12, 2021); Meeting with Change (Aug. 6, 2021); Meeting with UHG (June 30, 2021); Email from M. Brazill to A. Howlett et al. (July 22, 2021); Meeting with UHG (Aug. 4, 2021); Email from M. Brazill to A. Howlett (Aug. 23, 2021); Email from M. Brazill to A. Howlett (Aug. 24, 2021); Email from M. Brazill to A. Howlett (Aug. 26, 2021).

[13] Email from M. Brazill to K. Bradish (Aug. 13 2021) (raising Change's "untimely, incomplete, vague and sometimes inaccurate responses" to Staff's data questions); Meeting with Change (Aug. 10, 2021); Meeting with Change (Aug. 12, 2021).

staff in mid-August 2021,[14] while United's obstinacy persisted well past its purported certification of compliance with the Second Request on September 20, 2021.[15] As you also know, staff discovered serious deficiencies in United's data productions, beginning with UHG's initial data production on July 30, 2021. For almost 11 weeks, staff attempted to obtain timely information from United on this issue.[16] This process was very difficult and answers were not forthcoming from United. Finally, 10 weeks after United purported to certify compliance, United produced to the Division its clearinghouse data from March to December 2019.

Given the size, complexity, and significance of the proposed transaction, the parties' untimely and often incomplete productions and spotty engagement hindered the Division's investigation and increased the time and resources required to reach a decision on this matter. Thus, while the Division has had an open investigation into this transaction for approximately 14 months, the Division actually had a fraction of that time to work with probative documents and data to make meaningful assessments of the potential impact the proposed transaction would have in the healthcare industry.

Second, staff's difficulties with the parties' counsel were not confined to Second Request negotiations. Staff also encountered significant problems with United's document production in particular. For example, after producing a privilege log comprising over 350,000 documents, for which you claimed United spent $■■■■■■,[17] United clawed back many dozens of documents on assertions of privilege in a haphazard and chaotic manner. These claw backs occurred after the Division had been working with United's productions for several months and occurred in the middle of a number of depositions, in many cases causing great disruption. The documents clawed back go to central issues in the investigation. Yet rather than cooperating with the Antitrust Division to get to the facts on these issues, United has chosen to assert what appear to be specious claims of privilege to keep the documents and information hidden.

Notwithstanding these difficulties, staff has continued to engage with counsel. We note that while your letter suggests that staff has not engaged, both Messrs. Reilly and Gelfand have stated otherwise and in fact have praised staff's work with the parties. Finally, while you refer to the parties' submissions, it is important to remind you of the persistent requests that staff has made of United for information regarding its data use rights which United has still not provided.

Finally, your letter references staff's declining your recent request for vertical math calculations. As staff mentioned, last summer staff requested the parties' analyses in this regard, and you declined to provide any such analyses. That is the general course of engagement: the parties provide their arguments, their proposed analyses, and staff then considers those analyses, looks into our ability to replicate, and engages. Your clients chose not to do that here. It is unreasonable to believe that instead the Division will

---

[14] *See* Meeting with Change (Aug. 13, 2021).

[15] *See, e.g.*, Letter from M. Brazill to L. Oliver (Sept. 13, 2021); Letter from B. Bhagat to L. Oliver (Sept. 25, 2021); Letter from B. Bhagat et al. to L. Oliver et al. (Oct. 15, 2021);

[16] Email from M. Brazill to A. Howlett (Aug. 10, 2021); Email from M. Brazill to A. Howlett (Aug. 23, 2021); Email from M. Brazill to A. Howlett (Aug. 24, 2021); Email from M. Brazill to A. Howlett (Aug. 31, 2021); Letter from M. Brazill to L. Oliver (Sept. 13, 2021); Letter from B. Bhagat to L. Oliver (Sept. 25, 2021); Letter from B. Bhagat et al to L. Oliver et al. (Oct. 15, 2021); Modifications to Timing Agreement (Nov. 1, 2021).

[17] Letter from L. Oliver to B. Bhagat et al. (Oct. 20, 2021).

unilaterally disclose our internal analyses at the end of an investigation when there has not been that cooperative engagement during the investigation.

Sincerely,

/s/ Eric D. Welsh
Eric D. Welsh
Chief
Healthcare and Consumer Products Section

cc:
Matt Reilly, Esq., Kirkland & Ellis LLP
Sara Razi, Esq., Simpson Thacher & Bartlett LLP
David Gelfand, Esq., Cleary Gottlieb Steen & Hamilton