UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITEDHEALTH GROUP INCORPORATED and CHANGE HEALTHCARE INC.,<br><br>*Defendants*. | Civil Action No. 1:22-cv-0481 (CJN) |

**PLAINTIFFS' PRETRIAL STATEMENT**

**I.   STATEMENT OF THE CASE[1]**

1. This is a civil antitrust suit arising out of the antitrust laws of the United States, relating to UnitedHealth Group Incorporated's ("United") proposed acquisition of Change Healthcare Inc. ("Change") (the "Proposed Acquisition").

2. Plaintiffs United States, State of New York, and State of Minnesota filed this action on February 24, 2022, seeking a permanent injunction of the Proposed Acquisition. Plaintiffs allege that the Proposed Acquisition would violate the antitrust laws by (i) reducing competition in the sale of first-pass claims editing solutions; (ii) giving United the ability and incentive to obtain and use its rivals' competitively sensitive information, harming the competitive process in the sale of commercial health insurance to national accounts and large group employers; and (iii) providing United the ability

---

[1] Plaintiffs submit this Pretrial Statement pursuant to Local Civil Rule 16.5. Plaintiffs will provide a more detailed overview of their case in their pretrial brief, which will be submitted pursuant to the Case Management Order on July 20, 2022. *See* ECF No. 42, ¶ 9.

and incentive to raise its rivals' costs, harming the competitive process in the sale of commercial health insurance to national accounts and large group employers.

3. Plaintiff United States filed this action pursuant to Section 15 of the Clayton Act, 15 U.S.C. § 25, to prevent and restrain Defendants from violating Section 7 of the Clayton Act, 15 U.S.C. § 18. Plaintiffs Minnesota and New York by and through their respective Attorneys General, bring this action in their respective sovereign capacities and as *parens patriae* on behalf of the citizens, general welfare, and economy of their respective States under their statutory, equitable, or common law powers, and pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, to prevent and restrain Defendants from violating Section 7 of the Clayton Act, 15 U.S.C. § 18.

4. Defendants each filed their Answer on March 11, 2022, denying that the Proposed Acquisition would violate the antitrust laws. Change further alleged as an affirmative defense that the Complaint fails to state a claim upon which relief can be granted.

## II.    STATEMENT OF PLAINTIFFS' CLAIMS

5. Plaintiffs allege that United's acquisition of Change is likely to substantially lessen competition, and/or tend to create a monopoly, in interstate trade and commerce in the relevant markets of (i) first-pass claims editing, (ii) the sale of commercial health insurance to national accounts, and (iii) the sale of commercial health insurance to large group employers, in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.

6. Section 7 of the Clayton Act prohibits a merger "where in *any* line of commerce or in any activity affecting commerce in any section of the country, the effect of such acquisition may be substantially to lessen competition." 15 U.S.C. § 18 (emphasis added).

7. Section 7 of the Clayton Act is designed to preserve, prophylactically, a competitive market structure. *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 485 (1977) (Section 7 is, "as we have observed many times, a prophylactic measure, intended primarily to arrest

apprehended consequences of intercorporate relationships before those relationships could work their evil." (quotation omitted)); *United States v. Phila. Nat'l Bank*, 374 U.S. 321, 362 (1962) (Congress "intended to arrest anticompetitive tendencies in their 'incipiency'" (*quoting Brown Shoe Co. v. United States*, 370 U.S. 317, 322 (1962)).

8. Accordingly, a merger may "substantially" lessen competition in the meaning of Section 7 if there is a "reasonable probability" that anticompetitive effects materialize from the merger. *FTC v. H.J. Heinz Co.*, 246 F.3d 708, 713 (D.C. Cir. 2001) (citing *Brown Shoe*, 370 U.S. at 317, 322 and legislative history for the proposition that Section 7 does not demand certainty but rather proscribes mergers with a "reasonable probability" of anticompetitive effects). "All that is necessary is that the merger create an appreciable danger of [anticompetitive] consequences in the future." *United States v. H&R Block, Inc.*, 833 F. Supp. 2d 36, 49 (D.D.C. 2011) (*quoting Hosp. Corp. of Am. v. FTC*, 807 F.2d 1381, 1389 (7th Cir. 1986) (emphasis added)); *accord Heinz*, 246 F.3d 708, 719 (D.C. Cir. 2001); *FTC v. Whole Foods Mkt., Inc.*, 548 F.3d 1028, 1046 (D.C. Cir. 2008) (Tatel, J., concurring).

9. In Section 7 cases, "[t]o establish a prima facie case, the Government must (1) propose the proper relevant market and (2) show that the effect of the merger in that market is likely to be anticompetitive*." FTC v. Penn State Hershey Med. Ctr.*, 838 F.3d 327, 337-38 (3d Cir. 2016); *see also St. Alphonsus Med. Ctr.-Nampa Inc. v. St. Luke's Health Sys., Ltd.*, 778 F.3d 775, 785 (9th Cir. 2015) ("a prima facie case is established if the plaintiff proves that the merger will probably lead to anticompetitive effects in that market") *accord United States v. AT&T, Inc.*, 916 F.3d 1029, 1033 (D.C. Cir. 2019) (vertical mergers require same prima facie case).

10. Once the government makes a prima facie case, the burden shifts to the defendants to "provide sufficient evidence that the prima facie case 'inaccurately predicts the relevant transaction's probable effect on future competition.'" *United States v. Anthem, Inc.*, 855 F.3d 345, 349 (D.C.

Cir.2017 (*quoting United States v. Baker Hughes*, 908 F.2d 981, 991 (D.C. Cir. 1990)); *see also St. Alphonsus Med. Ctr.*, 778 F.3d at 791 (rebuttal evidence must "show that the prediction of anticompetitive effects from the prima facie case is inaccurate"). "The more compelling the prima facie case, the more evidence the defendant must present to rebut it successfully." *Anthem,* 855 F.3d at 349-50 (*quoting Baker Hughes*, 908 F.2d at 991). Courts use the same burden-shifting framework for both horizontal merger cases and vertical merger cases. *See AT&T*, 916 F.3d at 1032 (after the government has made a "'fact-specific' showing that the proposed merger is 'likely to be anticompetitive'… the burden shifts to the defendant to present evidence that the prima facie case 'inaccurately predicts the relevant transaction's probable effect on future competition')" (quoting *Anthem*, 855 F.3d at 349).

11. If, as discussed above, the result of the presentation of evidence is an "appreciable danger" of anticompetitive effects, *H&R Block*, 833 F. Supp. 2d at 49 (quotation omitted), then Section 7 requires the Court "to arrest [those] anticompetitive tendencies in their incipiency," *Phila. Nat'l Bank*, 374 U.S. at 362 (quotation omitted). "[D]oubts are to be resolved against the transaction." *FTC v. Elders Grain, Inc.*, 868 F.2d 901, 906 (7th Cir. 1989).

12. Once the government establishes that a merger violates Section 7, "all doubts as to the remedy are to be resolved in its favor." *United States v. E. I. du Pont de Nemours & Co.*, 366 U.S. 316, 334 (1961). Accordingly, the preferred remedy for a merger violating Section 7 is for the court to issue a "full stop injunction" preventing the parties from completing their unlawful merger. *PFTC v. PPG Indus., Inc.*, 798 F.2d 1500, 1506–07; *see also Phila. Nat'l Bank*, 374 U.S. at 363 (stating that if the government establishes a prima facie case and the defendants fail to clearly rebut that case, the merger "must be enjoined").

### III. PLAINTIFFS' SCHEDULE OF WITNESSES

13. Plaintiffs' Anticipated Witness List and Order is attached as Exhibit 1.

14. Plaintiffs have used their best efforts to describe the testimony to be elicited from each witness as well as an estimate of time to be used with each witness. Plaintiffs reserve the right to question any witness regarding any matter relevant to the issues in this case, and to question witnesses for more or less than the estimated time, within Plaintiffs' allocation of time in this trial.

15. Plaintiffs reserve the right to offer the deposition designations of any witness on Plaintiffs' Witness List in lieu of calling them to testify live, and to introduce designated testimony of witnesses who testify live for the limited purpose of establishing admissibility and moving documents into evidence.

## IV. PLAINTIFFS' EXHIBIT LIST

16. Plaintiffs' Exhibit List is attached as Exhibit 2.

17. Plaintiffs reserve the right to put into evidence any exhibit listed on Plaintiffs' or Defendants' Exhibit Lists.

18. Plaintiffs received a production from Defendants on July 11, 2022. Plaintiffs are supplementing their Exhibit List to add two exhibits, PX944 and PX945, from that production.

## V. PLAINTIFFS' DEPOSITION DESIGNATIONS

19. Plaintiffs' Deposition Designations are attached as Exhibit 3.

20. Plaintiffs reserve the right to put into evidence any portion of deposition testimony designated by Plaintiffs or Defendants. Plaintiffs further reserve the right to use any and all deposition testimony, whether or not designated, for cross-examination, impeachment, or rebuttal purposes. Additionally, to the extent any portions of these designations include objections or colloquy of counsel to certain questions, Plaintiffs reserve the right to remove those objections or colloquy before the deposition excerpts are played or read into evidence.

21. Plaintiffs reserve the right to introduce designated deposition testimony of witnesses who testify live for the limited purpose of establishing admissibility and moving documents into

evidence. Plaintiffs will otherwise withdraw their designations of the deposition testimony of witnesses who testify live at trial.

22.     Plaintiffs reserve the right to introduce into evidence any deposition of any party taken pursuant to Fed. R. Civ. P. 30(b)(6) or taken pursuant to a 30(b)(6)-style Civil Investigative Demand for Oral Testimony.

## VI.     DAMAGES

23.     Plaintiffs do not seek to recover damages.

## VII.    PLAINTIFFS' REQUEST FOR RELIEF

24.     Plaintiffs request that the Court:

a.      adjudge and decree United's proposed acquisition of Change to violate Section 7 of the Clayton Act, 15 U.S.C. § 18;

b.      permanently enjoin Defendants from consummating United's proposed acquisition of Change or from entering into or carrying out any other agreement, understanding, or plan by which Change would be acquired by, acquire, or merge with United;

c.      award each Plaintiff an amount equal to its costs incurred in bringing this action on behalf of its citizens;

d.      grant Plaintiffs such other relief as the Court deems just and proper.

Dated: July 13, 2022

/s/ Eric D. Welsh
Eric D. Welsh (D.C. Bar No. 998618)
Travis R. Chapman
U.S. Department of Justice
Antitrust Division
450 Fifth Street, NW, Suite 4100
Washington, DC 20530
Telephone: (202) 353-9006
Fax: (202) 307-5802
Email: travis.chapman@usdoj.gov

*Attorneys for United States of America*

/s/ Elizabeth Odette
Elizabeth Odette
James W. Canaday
Jason Pleggenkuhle
Katherine Moerke
Office of the Minnesota Attorney General
Consumer, Wage and Antitrust Division
445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2131
Telephone: (651) 728-7208
Email: elizabeth.odette@ag.state.mn.us

*Attorneys for State of Minnesota*

/s/ Olga Kogan
Christopher D'Angelo (D.C. Bar No. 502220)
Olga Kogan
Elinor R. Hoffmann
Amy E. McFarlane
Benjamin J. Cole
New York State Office of the Attorney General
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-8262
Email: olga.kogan@ag.ny.gov

*Attorneys for State of New York*