**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*,<br><br>        *Plaintiffs*,<br><br>v.<br><br>UNITEDHEALTH GROUP<br>INCORPORATED, *et al.*,<br><br>        *Defendants*. | Civil Action No. 1:22-cv-0481 (CJN) |

**<u>DEFENDANTS' PRETRIAL STATEMENT</u>**

1.     **Statement of the Case**

On February 24, 2022, the United States of America, the State of Minnesota, and the State of New York (collectively, "Plaintiffs") sued to block the proposed acquisition of Change Healthcare, Inc. ("Change") by UnitedHealth Group, Incorporated ("UHG"; collectively, "Defendants").  ECF No. 1.  Plaintiffs brought suit under Section 7 of the Clayton Act, 15 U.S.C. § 18, and alleged that the transaction "would likely substantially lessen competition and harm consumers" (defined as national account and large employer groups that purchase health insurance services) in three ways: (1) the transaction allegedly would tend to create a monopoly in the first-pass claims-editing-solutions market by combining UHG's and Change's respective first-pass claims editing products (horizontal theory); (2) UHG's acquisition of Change's electronic data interchange ("EDI") clearinghouse allegedly would substantially lessen competition in the markets for the sale of commercial health insurance to national accounts and large group employers (vertical theory); and (3) acquiring Change's EDI clearinghouse allegedly would allow UHG to raise its rivals' costs by denying or delaying their access to innovations or slowing or stopping their EDI transactions (vertical theory).  *Id.* at ¶¶ 84, 85–98, 99–107, 108–113.  Defendants deny all of these allegations, which are meritless.

The Court has jurisdiction over this action under Section 15 of the Clayton Act, 15 U.S.C. § 25, and 28 U.S.C. §§ 1331, 1337(a), and 1345.

2.     **Statement of Claims**

Defendants make no affirmative claims in this action.

3.     **Statement of Defenses**

Defendants deny each of Plaintiffs' claims.  More specifically, Defendants assert that Plaintiffs' theories of competitive harm have no basis in fact or law, and do not provide any basis for blocking what is clearly a pro-competitive, pro-consumer transaction.

1

*First*, Plaintiffs' horizontal theory fails because UHG has already agreed to divest the entirety of Change's claims editing business (ClaimsXten) to TPG Capital.  TPG is a private equity firm with a strong track record of successfully investing and growing healthcare and technology companies and executing carve-out transactions.  It has robust access to capital and specific plans to continue to grow the ClaimsXten business and invest in continued innovation.  TPG is an ideal divestiture buyer, and its purchase of ClaimsXten resolves any horizontal concerns from this transaction.  ClaimsXten will remain a leading independent competitor for claims-editing.

*Second*, there is no basis for Plaintiffs' vertical theory that UHG's access to Change's EDI clearinghouse data will harm competition.  Plaintiffs claim that UHG—through its healthcare technology and analytics business OptumInsight—will gain access to claims data passing through Change's EDI network and then use that data to help its insurance business—UnitedHealthcare ("UHC")—gain a competitive advantage in the large-group and national-account markets.  To start, the business model and financial success of OptumInsight depend on providing products and services not only to UHC but also to a wide range of external health insurers and healthcare providers that compete with UHC.  It is for that very reason that OptumInsight has a strong culture of operating at arm's length from, and independently of, UHC.  OptumInsight has earned the trust of its external customers by serving all health insurer and provider customers faithfully.  Any misuse of customer data would be economic suicide for OptumInsight because its sophisticated external customer base would promptly cease using OptumInsight's services and turn to any number of competitors.  Breaching that trust would also harm the value of the newly combined business by orders of magnitude greater than any conceivable gain.  Moreover, and although Plaintiffs make no mention of it in their Complaint, OptumInsight already provides products and services to many of UHC's largest competitors, and therefore already has access to those

competitors' claims data.   But far from abusing that information, OptumInsight invests extraordinary time, money, and resources into safeguarding that information and keeping it walled off from UHC.

To that end, UHG's existing firewalls and data-security policies prohibit employees from sharing external customer claims data, or any insights derived therefrom, with UHC.   UHG's firewalls are similar to those accepted and lauded by Plaintiffs (specifically, the United States) in prior merger challenges, and they have been subject to audits by UHG's customers and others. Plaintiffs' theory that UHG will suddenly stop enforcing those policies and obeying those commitments is nonsensical, speculative, and fails to meet Plaintiffs' burden of proving a substantial lessening of competition in the alleged markets.   Thus, this theory provides no basis for blocking a merger with such pro-competitive and pro-consumer implications.

*Third*, Plaintiffs' additional vertical theory—that UHG will raise prices, degrade quality, or withhold innovations from its rivals by manipulating Change's EDI network—is similarly baseless and nonsensical.   As an initial matter, Plaintiffs appear to have abandoned their theory that UHG will somehow degrade the quality of the Change EDI network for UHC's rivals.   And even if Plaintiffs have not abandoned this theory, it fails nevertheless:  UHG has neither the ability nor the incentive to degrade EDI quality.   Further, it would make no economic sense for UHG to discriminate against rival health insurers with respect to EDI services, because they constitute less than 1% of a payer's cost structure and are sometimes provided for free.   Contrary to Plaintiffs' speculation, therefore, increasing the cost of those services would have zero impact on "downstream" competition for large-group and national-account health insurance customers.   In any event, both healthcare providers and health insurers can and do switch to alternative EDI

clearinghouses, and any attempt at raising prices, degrading quality, or withholding innovations would simply drive customers away to alternative EDI clearinghouses.

Nor is there any support for Plaintiffs' speculation that the acquisition of Change will lead to UHG denying or delaying innovations that Change would otherwise make available. Putting aside the speculative nature of alleged innovation-related harms, OptumInsight has served non-UHC payer customers for more than a decade, and it has consistently shared innovations with the marketplace generally. Indeed, the potential returns associated with sharing new product and service innovations with the broader healthcare provider and health plan marketplace are the very driver of UHG pursuing this transaction in the first place.

Finally, in addition to all of the above, Plaintiffs ignore that UHG has offered contractual commitments to Change's EDI customers, under which UHG agreed (among other things) to maintain firewall protections, continue to process EDI transactions consistent with industry standards, and make available to the market any innovations developed using Change's EDI data.

4. **Schedule of Defendants' Witnesses**[1]

A. Witnesses who Defendants expect to present (in anticipated chronological order, if DOJ does not call these witnesses first in its case-in-chief):[2]

    1. *Andrew Witty*. Defendants expect Mr. Witty to testify regarding UHG's vertical integration, the role of OptumInsight within UHG, OptumInsight's multi-payer strategy, and the rationale for the transaction. Defendants expect Mr. Witty's direct testimony to last roughly 1.5 hours.

---

[1]    As listed in Appendix B, Defendants also expect to offer testimony from Ashok Chennuru of Anthem (Rule 30(b)(6) Representative) and Jeffrey Rhodes of TPG, Inc by deposition.

[2]    Each witness can be reached via counsel for that witness's employer or former employer as provided on the Defendants' Amended Final Witness List; any expert witness listed by Defendants can be reached through Defendants' counsel.

2. *David Wichmann*.  Defendants expect Mr. Wichmann to testify regarding UHG's vertical integration, the transaction rationale, protection of claims data, and data use and purposes.  Defendants expect Mr. Wichmann's direct testimony to last roughly 1 hour.

3. *Steve Yurjevich*.  Defendants expect Mr. Yurjevich to testify regarding the transaction rationale, OptumInsight's business, multi-payer strategy, protection of claims data, and data use and purposes.  Defendants expect Mr. Yurjevich's direct testimony to last roughly 1.5 hours.

4. *Peter Dumont*.  Defendants expect Mr. Dumont to testify regarding UHG's protection of claims data and data use and purposes.  Defendants expect Mr. Dumont's direct testimony to last roughly 1 hour.

5. *Paul Higday*.  Defendants expect Mr. Higday to testify regarding the transaction rationale and data use and purposes.  Defendants expect Mr. Higday's direct testimony to last roughly 1 hour.

6. *Erin Schmuker*.  Defendants expect Ms. Schmuker to testify regarding the transaction rationale, efforts to eliminate waste and increase efficiencies, OptumInsight's multi-payer strategy, protection of claims data, and data use and purposes.  Defendants expect Ms. Schmuker's direct testimony to last roughly 1 hour.

7. *Thomas Gehlbach*.  Defendants expect Mr. Gehlbach to testify regarding UHC's commercial healthcare insurance business, commercial underwriting, the state of competition in commercial health insurance markets, information

received in pursuing new business and renewals, and data use and purposes. Defendants expect Mr. Gehlbach's direct testimony to last roughly 1.5 hours.

8. *Steve Griffiths*.  Defendants expect Mr. Griffiths to testify regarding UHG's protection of claims data and data use, purposes, and analytics, as well as UHG's current utilization of machine learning and artificial intelligence technologies.  Defendants expect Mr. Griffiths' direct testimony to last roughly .75 hours.

9. *Neil de Crescenzo*.  Defendants expect Mr. de Crescenzo to testify regarding the transaction rationale, protection of claims data, data use and purposes, multi-payer strategy, and Change's EDI and claims editing businesses. Defendants expect Mr. de Crescenzo's direct testimony to last roughly 1.5 hours.

10. *Kris Joshi*.  Defendants expect Mr. Joshi to testify regarding Change's EDI and claims editing businesses.  Defendants expect Mr. Joshi's direct testimony to last roughly .75 hours.

11. *Mike Peresie*.  Defendants expect Mr. Peresie to testify regarding Change's EDI and claims editing businesses.  Defendants expect Mr. Peresie's direct testimony to last roughly 1 hour.

12. *Cindy Klain*.  Defendants expect Ms. Klain to testify regarding Change's EDI and claims editing businesses.  Defendants expect Ms. Klain's direct testimony to last roughly .75 hours.

13. *Carolyn Wukitch*.   Defendants expect Ms. Wukitch to testify regarding Change's claims editing business and its proposed divestiture to TPG. Defendants expect Ms. Wukitch's direct testimony to last roughly 1.5 hours.

14. *Nehal Raj*.   Defendants expect Mr. Raj to testify regarding the proposed divestiture of Change's claims editing business to TPG.   Defendants expect Mr. Raj's direct testimony to last roughly 1.25 hours.

15. *Agency Representative of the United States Department of Health and Human Services*.   Defendants expect the Agency Representative to testify regarding the Agency's Transparency in Coverage Rule and Hospital Price Transparency Rule.   Defendants expect the Agency Representative's direct testimony to last roughly .75 hours.

16. *Catherine Tucker*.*[3]   Defendants expect Dr. Tucker to testify as an expert regarding the report of Plaintiffs' expert Dr. Benjamin Handel and vertical theories of harm.   Defendants expect Dr. Tucker's expert direct testimony to last roughly 1.5 hours.

17. *Kevin Murphy*.*   Defendants expect Dr. Murphy to testify as an expert regarding the report of Plaintiffs' expert Dr. Gautam Gowrisankaran and vertical and horizontal theories of harm. Defendants expect Dr. Murphy's expert direct testimony to last roughly 2 hours.

B.  Witnesses that Defendants may call if the need arises (alphabetical order):

1.  Chris Hasslinger

2.  Dirk McMahon

---

[3]     Due to scheduling issues, Dr. Tucker may present testimony during Plaintiffs' case in chief.

3. Robert Musslewhite

4. Chris Pass

5. Dan Schumacher

**5.**    **List of Defendants' Exhibits**

Defendants' list of exhibits to be offered in evidence is attached hereto as Appendix A.

**6.**    **Defendants' Designation of Depositions, or Portions Thereof**

Defendants' designations of depositions to be offered in evidence are attached as Appendix

B.[4]

**7.**    **Defendants' Statement Concerning Itemization of Damages**

Defendants do not have a claim for money damages in this case.

**8.**    **Defendants' Request for Other Relief**

At the conclusion of the case, Defendants will request that this Court: (1) grant judgment to Defendants, decline to enter any permanent injunction, and permit Defendants to consummate the transaction whereby UHG will acquire Change; and (2) effectuate the divestiture offered by Defendants by ordering UHG to divest the ClaimsXten business to TPG.

---

[4]    Pursuant to L.R. 16.4, Defendants have not included counter-designations or counter-counter designations in this appendix, but the parties are working together on these issues.

Dated:  July 13, 2022

Respectfully submitted,

By:  */s/ Craig S. Primis*
    Craig S. Primis

Matthew J. Reilly, P.C. (D.C. Bar No. 457884)
Craig S. Primis, P.C. (D.C. Bar No. 454796)
K. Winn Allen, P.C. (D.C. Bar No. 1000590)
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone:  (202) 389-5000
Facsimile:  (202) 389-5200
matt.reilly@kirkland.com
craig.primis@kirkland.com
winn.allen@kirkland.com

Charles Loughlin (D.C. Bar. No. 448219)
Justin W. Bernick (D.C. Bar. No. 988245)
**HOGAN LOVELLS US LLP**
555 Thirteenth Street, NW
Washington, D.C. 20004
Telephone:  (202) 637-5600
Facsimile:  (202) 637-5910
chuck.loughlin@hoganlovells.com
justin.bernick@hoganlovells.com

*Counsel for Defendant UnitedHealth Group Incorporated*

Sara Y. Razi (D.C. Bar No. 473647)
Abram J. Ellis (D.C. Bar No. 497634)
Nathaniel Preston Miller (D.C. Bar No. 1021557)
**SIMPSON, THACHER & BARTLETT LLP**
900 G Street, NW
Washington, DC 20001
Telephone:  (202) 636-5500
Facsimile:  (202) 636-5502
sara.razi@stblaw.com
aellis@stblaw.com
preston.miller@stblaw.com

David I. Gelfand (D.C. Bar No. 416596)
Daniel P. Culley (D.C. Bar No. 988557)
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
2112 Pennsylvania Ave, N.W.
Washington, DC 20037
Telephone:  (202) 974-1500
Facsimile:  (202) 974-1999
dgelfand@cgsh.com

*Counsel for Defendant Change Healthcare Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of July 2022, counsel of record have been served by electronic mail, pursuant to agreement of the parties, with a true and correct copy of the foregoing.

/s/ *Craig S. Primis*

Craig S. Primis, P.C. (D.C. Bar No. 454796)