UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITEDHEALTH GROUP INCORPORATED<br>and<br>CHANGE HEALTHCARE INC.,<br><br>*Defendants*. | Civil Action No. 1:22-cv-0481 (CJN) |

**THE GOVERNMENT'S NOTICE OF AUTHORITY IN RESPONSE TO THE COURT'S QUESTIONS**

Plaintiffs United States of America, State of Minnesota, and State of New York (collectively, the "Government") file this notice of supplemental authority to address two questions the Court raised at closing argument.

First, the Court asked whether any court has ever enjoined a vertical acquisition where the merged entity would not have market power in either the upstream or downstream market. **9/8**, 172:13-17. The answer is *yes*. The Supreme Court has decided two vertical merger cases since Congress amended the Clayton Act in 1950, and in each case the Court held that the merger violated Section 7 without any suggestion of, much less reliance on, the existence of market power in either the up- or downstream market by the merging companies. *See Ford Motor Co. v. United States*, 405 U.S. 562, 566-68 (1972); *Brown Shoe Co. v. United States*, 370 U.S. 294, 302-03, 327-34 (1962).

Second, the Court asked how a proposed divestiture is analyzed under the Section 7 burden-shifting framework. **9/8**, 22:12-27:12, 32:7-36:6, 159:13-164:4. The proper procedure,

1

as stated by the overwhelming majority of courts in this district to have addressed the issue, is a two-step process: when a plaintiff establishes its prima facie case or that the proposed merger is presumptively anticompetitive, then "[*i*]*n rebuttal*, a defendant may introduce evidence that a proposed divestiture would 'restore [the] competition' lost by the merger counteracting the anticompetitive effects of the merger." *United States v. Aetna Inc.*, 240 F. Supp. 3d 1, 60 (D.D.C. 2017) (emphasis added) (citation omitted); *accord FTC v. RAG-Stiftung*, 436 F. Supp. 3d 278, 304 (D.D.C. 2020); *FTC v. Staples, Inc.*, 190 F. Supp. 3d 100, 137 n.15 (D.D.C. 2016); *FTC v. Sysco Corp.*, 113 F. Supp. 3d 1, 72 (D.D.C. 2015); *see FTC v. Tronox Ltd.*, 332 F. Supp. 3d 187, 217-18, 218 n.13 (D.D.C. 2018) (considering, at preliminary injunction stage, proposed divestiture as part of the equities rather than the merits of Section 7 claim).  Put differently, "the divestiture must 'replac[e] the *competitive intensity* lost as a result of the merger.'" *Aetna*, 240 F. Supp. 3d at 60 (alteration in original) (quoting *Sysco*, 113 F. Supp. 3d at 72); *accord RAG-Stiftung*, 436 F. Supp. 3d at 304.[1]

Section 7, as interpreted by the Supreme Court, does not permit defendants to salvage an otherwise illegal merger by showing that the transaction *less* the divested assets would not exceed *Philadelphia National Bank*'s presumption of illegality or otherwise violate Section 7.

---

[1] *FTC v. Arch Coal, Inc.*, 329 F. Supp. 2d 109 (D.D.C. 2004), is not to the contrary.  There, the court rejected the FTC's attempt to preclude the defendants from introducing *any* evidence that their proposed divestiture would restore the competition lost by the merger.  *See generally FTC v. Arch Coal, Inc.*, No. 04-0534 (JDB) (D.D.C. July 7, 2004), ECF No. 67.  The divesting firm was "plainly a relatively weak competitor . . . with no convincing prospects for improvement"; indeed, the divestiture buyer would "be a *stronger* competitive force in a post-merger market than [the divesting firm] has been or will be if no merger occurs."  *Arch Coal*, 329 F. Supp. 2d at 157 (emphasis added).  That is not the case here.  Where "the parties hotly contest the effect of the proposed divestiture" on the competitive intensity lost from a merger, the two-step process applies, as Judge Bates himself explained in *Aetna*.  240 F. Supp. 3d at 60 (citing *Arch Coal* for the proposition that defendants' burden of producing rebuttal evidence includes evidence about a proposed divestiture).

Divestitures are instead scrutinized under prevailing precedent on remedies. As the Court has explained, "[t]he burden is not on the Government to show de novo that [a defendant's proposed remedy] would violate § 7." *United States v. E. I. du Pont de Nemours & Co.*, 366 U.S. 316, 331 (1961). Instead, defendants must convince the court that their proposed divestiture would "restor[e] the *pre-acquisition* situation" (not create a somewhat less competitive one) and "*eliminate*" (not reduce) "the anticompetitive consequences" of a merger. *Ford*, 405 U.S. at 573-74 (emphasis added); *see also id.* at 573 n.8 ("[R]elief [under the antitrust laws] must be directed to that which is 'necessary and appropriate in the public interest *to eliminate the effects* of such acquisition offensive to the statute,' or which will '*cure the ill effects* of the illegal conduct, and *assure the public freedom from* its continuance.'" (first quoting *United States v. E. I. du Pont de Nemours & Co.*, 353 U.S. 586, 607 (1957); and then quoting *United States v. U.S. Gypsum Co.*, 340 U.S. 76, 88 (1950))); *Polypore Int'l, Inc. v. FTC*, 686 F.3d 1208, 1219 (11th Cir. 2012) (divestiture appropriate because it "restore[d] the competition eliminated by the acquisition"). A Section 7 remedy must be one that "best promotes competition," not "the remedy least burdensome to the defendant," *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 988 F.3d 690, 720 (4th Cir. 2021), no matter the "economic hardship," *du Pont*, 366 U.S. at 327.[2]

This procedure also makes sense. The competition protected by Section 7 is existing, and real. By contrast, the competition that might be established by a defendant's divestiture is hypothetical. It is not anomalous to have a high standard if a defendant seeks to replace existing

---

[2] These same basic principles apply when courts enter relief for any antitrust violation. *See United States v. United Shoe Mach. Corp.*, 391 U.S. 244, 250 (1968) ("[I]t is the duty of the court to prescribe relief which will terminate the illegal monopoly, deny to the defendant the fruits of its statutory violation, and ensure that there remain no practices likely to result in monopolization in the future."); *United States v. Microsoft Corp.*, 253 F.3d 34, 103 (D.C. Cir. 2001) (en banc) (per curiam) (same).

competition with uncertain competition. The Supreme Court's approach ensures that the American public will not be forced to bear the risk of that uncertainty. That is why any "doubts are to be resolved against the transaction." *FTC v. Elders Grain, Inc.*, 868 F.2d 901, 906 (7th Cir. 1989) (Posner, J.). Where a merger would not only result in significant market share and increases in concentration, but also threaten to soften head-to-head competition and inhibit future innovation, the showing required in rebuttal is deservedly "compelling" and "extraordinary." *See FTC v. H.J. Heinz Co.*, 246 F.3d 708, 720, 725 (D.C. Cir. 2001) (quoting *United States v. Baker Hughes Inc.*, 908 F.2d 981, 991 (D.C. Cir. 1990) (Thomas, J.)). Against such evidence, a rebuttal focused narrowly on a proposed divestiture's impact on "[t]he Herfindahl-Hirschman Index cannot guarantee litigation victories." *See Baker Hughes*, 908 F.2d at 992. Permitting the consummation of an anticompetitive merger in light of a proposed divestiture that fails to fully restore the state of pre-acquisition competition would turn the Clayton Act on its head and condone, rather than condemn, incipient increases in market concentration. *See Brown Shoe*, 370 U.S. at 317-18.

The decision by merging parties to enter an unlawful merger agreement only to propose a later divestiture designed to "fix" it also raises important concerns under the merger review process enacted by Congress. The antitrust agencies have only limited time to review a proposed merger—as presented in the premerger filing—before it may be consummated. 15 U.S.C. § 18a(a), (b)(1), (d)(1), (e)(2). In their investigations, the agencies have tools to "require the submission of additional information or documentary material," including the production of documents, written responses to interrogatories, and deposition testimony. *Id.* §§ 18a(e)(1)(A), 1312(a). Permitting merging companies to notify the agencies of a proposed merger, only to belatedly enter a divestiture agreement (here, after the initiation of litigation), presents enormous

incentives for gamesmanship, as it would reward parties for waiting as long as possible to propose a divestiture and short-circuit the review process enacted by Congress. Such a rule would permit defendants to agree on a merger to monopoly, propose a divestiture of some assets to a buyer who poses a weaker competitive threat to the merged entity than the premerger competition posed, and evade consequences by simply claiming as Defendants do that the market shares do not change.

Dated:  September 12, 2022

Respectfully submitted,

/s/ Eric D. Welsh
Eric D. Welsh (D.C. Bar No. 998618)
Jill C. Maguire (D.C. Bar No. 979595)
Travis R. Chapman
Jared T. Bond
Markus Brazill

U.S. Department of Justice
Antitrust Division
450 Fifth Street, NW, Suite 4100
Washington, DC 20530
Tel.: (202) 598-8681
Email: eric.welsh@usdoj.gov

*Attorneys for United States of America*

/s/ Elizabeth Odette
Elizabeth Odette
James W. Canaday
Jason Pleggenkuhle
Katherine Moerke

Office of the Minnesota Attorney General
Consumer, Wage and Antitrust Division
445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2131
Telephone: (651) 757-1028
Email: elizabeth.odette@ag.state.mn.us

*Attorneys for State of Minnesota*

/s/ Olga Kogan
Christopher D'Angelo (D.C. Bar No. 502220)
Olga Kogan
Benjamin J. Cole
Elinor R. Hoffmann
Amy E. McFarlane

New York State Office of the Attorney General
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-8262
Email: olga.kogan@ag.ny.gov

*Attorneys for State of New York*